The next case, after everyone has settled down and caught their collective breaths, is Multimedia Patent Trust v. LG Electronics, 2013-16-21, Ms. Sullivan. Thank you, Your Honor. Kathleen Sullivan for Multimedia Patent Trust, or MPT. Your Honor, we turn now to a different matter from the matter we were just discussing in the 16-20 appeal. But I want to be clear that if you should reverse and remand on the 16-20 appeal, you should also reverse and remand on 16-21, because the collateral estoppel ruling in 16-21 that we appealed from in 16-21 was based on the non-infringement findings in 16-20. So if you reverse in 16-20, you can reverse in 16-21 without going further. But if you do go further, we respectfully submit that the judicial estoppel ruling the Court used as the basis for its collateral estoppel ruling in 16-21, in the 16-21 appeal, was erroneous. It was erroneous as a matter of law because the Court found judicial estoppel when two elements, two elements of judicial estoppel were missing. Let me start with the most important one. We need to have prevailed in advancing our position in the prior judicial action. Here the Court found that we had prevailed, or she ignored the fact that we hadn't prevailed, with respect to the representativeness of the Qualcomm MSN6575 chip-containing products. I don't see her deciding the representativeness. What I see her deciding is whether you raised the question of representativeness at the particularly appropriate time such that you would even have the right to make the argument. And upon that, it seems you did prevail. Not the question of whether it was representative or not, but the question of whether you properly put that argument before everyone at the appropriate time. Your Honor, with respect, we think she did find that she rejected our argument for representativeness. If she had accepted our representativeness argument, we would have tried all the products for the same single trial. I think that maybe you misunderstood me. It wasn't that she decided the issue of whether it was or was not representative in your favor, but the issue of whether you had sufficiently raised that question such that she shouldn't strike it with prejudice. Well, Your Honor, she did do that. She didn't strike it with prejudice. No, no, no. She decided that she would not strike it with prejudice. I'm agreeing with you. That's what they wanted. They didn't want to have to fight the battle. So you're saying you didn't win, but they sure as heck didn't win. I agree, Your Honor. And if anyone should be judicially established here, it should be LG. But we don't claim that either party should be judicially established. What the district court here did was set – I don't get that at all. Why should they be judicially established? Well, Your Honor, both sides have changed positions from the prior trial. Before we said that the MSM6575 chip-containing products were representative, LG said they were different. And if I remember right, what they said was you didn't give us the Qualcomm source code in adequate times such that we can figure out whether they're representative or not. Yes, but Your Honor, the district court found formally that we were diligent, that it was not our fault that a third party didn't disclose source codes to us in time. She said you were diligent, and that's why she allowed you to amend the infringement contentions with regard to the one chip, because when you got the source code, you then produced a claim chart with respect to that chip. But you weren't diligent with regard to the others because you didn't produce any sort of claim charts with regard to those. Actually, Your Honor, the district court found that we had been diligent with respect to 19 Qualcomm products. So it's an adjudicated finding of diligence. The district court did not find us non-diligent. But you're correct. She severed the products for another trial in which representativeness would be the issue. She did not dismiss with prejudice. But that's exactly why MPT did not prevail on representativeness before her. She postponed representativeness as an issue for the second action. I guess the question is, did you prevail on something? Did you get some kind of benefit in MPT-1? And maybe I think what the other side is trying to say, and maybe what the district court was trying to say below, is you did prevail on something in avoiding having your claims on the 18 chips dismissed with prejudice for failure to prosecute it adequately under Rule 41. And because you got that benefit, if you were to prevail in MPT-1, then you would get a shot at prosecuting or advancing your representativeness argument in MPT-2. But because you did not prevail in MPT-1, then you're foreclosed from any infringement arguments under MPT-2. So isn't that what the other side at least is arguing as to what you prevailed on? Yes, Your Honor, that's what the other side is arguing. Let me explain why it's incorrect. Let me start with the second point. Did the district court imagine that this was just a one-way ratchet? She was severing the non-MSM 6575 chips for a future trial contingent on her winning the first trial. She did not, Your Honor. And I'd refer you to all the post-verdict instances in which the district court continued to act as if representativeness or similarity was going to be a new issue tried in the second action. I'd refer Your Honors to the February 2013 hearing. This is after the verdict in the first action. At pages A1008 through A1011, the district court denies LG's attempt to include the severed chips in the final judgment in the first action. She denies a stay of discovery pending appeal. That's at 1009 to 110 and A1022. So, Your Honor, the district court has never conducted this case as if the second action on representativeness was contingent on MPT prevailing in the first action. To the contrary, she ran the second action well after the verdict and denied LG relief. As to your first point, Your Honor, on whether we prevailed by avoiding dismissal with prejudice, with respect, that's not prevailing with respect to the crucial issue here. The crucial issue here is, are the chips similar enough that the MSM 6575 containing chips are representative of the others? That's what she found collateral estoppel on. When she gets to her preclusion ruling, she says, well, there's preclusion because the chips, I find that the chips are, the similarity of the chip was decided in the prior case. And it wasn't decided in the prior case. The similarity between the chips in the first action and the non-MSM 6575 containing chips was not decided in the first action. So, Your Honor, what we needed to prevail on was the issue that creates the preclusion, and we did not. It's true we didn't lose through dismissal of prejudice the first time, but we didn't prevail on similarity. Similarity or representativeness was put off for the second action, and the district court reaffirmed that multiple times. And the district court also, if I could refer Your Honors to page A2033, that's where she said that representative claim charts are not proper, where there are meaningful differences between the accused instrumentalities. There, Your Honor, she's leaving open for the second action whether there's representativeness here. So, with respect, we don't think that… See, I guess I'm not fully following you. I wasn't under the impression that she had decided they were, in fact, representative, because if so, she wouldn't have needed to sever anything. Correct. I was under the impression that she said, okay, you made enough of a case for them being representative that I'm going to let you go forward in a separate action limited to that, which I think you agreed with, you said earlier, but I'm not going to let you drag that into this case because it will take too long and delay everything and prejudice LG. So, I don't understand why you get to expand the scope of the second case beyond what she seemed to clearly limit it to, which was your ability to establish that they are representative. So, Your Honor, you're absolutely right, and I agree with you 100%. That's exactly what she did. In fact, if you look at her order on the reconsideration motion, if you look at A203704, that's where the district court said, well, I don't think I'm prejudicing MPT because they can bring their representative, we can bring our representativeness claim arguments in the second action. So, the second action is where the substantive issue of representativeness or similarity is severed out. Yeah, but she also said at A2086, if there's a finding of no infringement, I doubt that they'd proceed. I guess that means you. There's judicial estoppel as well. Well, Your Honor, that's where we really strongly disagree. There can't be judicial estoppel if we didn't prevail on the representativeness issue. That's our main claim. Right, but you would lose your chance at trying to prove infringement of the other 18 chips because all along your position had been, please sever these 18 chips into a second case because if I win here on the first one, then I'll still get to fight another day on those 18 chips. I realize I've been tardy in getting my infringement contentions and claim charts together for all these other chips, but please don't dismiss those chips with prejudice. Your Honor, what we think we're entitled to is a conduct of the second action on the merits, and LG is perfectly free to come forward and ask for summary judgment and to try to turn our prior actions against us. They're free to do that, but it's improper for the district court to foreclose that. There was never any determination here on the merits of representativeness, and LG should not be heard to argue here in a footnote that, oh, maybe you should just say that representativeness was established. To the contrary, the second expert for MPT said that there were important differences between the chips in the first action and the severed chips, and you might say, well, how could she say that when your prior expert said, oh, they're similar, and the answer really comes from Judge Hoff. Judge Hoff said, I think there needs to be more time. Dr. Richardson was very rushed. He only had a week, and if I want to provide more time for the expert, the very reason she severed and postponed the second action was so that experts might come to a, who really examine the source code, to come to a different conclusion. If I were to interpret her action as allowing you to go forward in a second case limited to establishing that the second set of chips, the 18 chips, are representative of the first, why isn't this case over? I think what we ask you to do is to remand for a new trial on whether the 18 chips are similar to the ones in the first. But that's not what I asked you. Focus on my question. The case is over. I'm sorry, Your Honor. If I believe that she limited your second action to only going forward on the argument you made in the first, which is that they are representative, and trying to establish that, why isn't this case over? It would be, but that's not what she did. Your Honor, it's absolutely clear that the judge set the second action for a de novo, clean slate determination of whether the 18 chips were similar to the chips in the first trial. She said over and over again, the experts will need time to look at the source code and determine it. Representativeness is for the other action. The second trial was to be on the question of representativeness. LG is free to argue for summary judgment, and it's free to try to use our prior arguments against us, but what shouldn't happen is a judicial estoppel ruling where we didn't prevail before. There's also an absence of prejudice to LG. LG had ample opportunity to accept the deal we offered, which is let's try them all at once, just accept representativeness now. So they weren't prejudiced by electing over our offer to accept the separate trial rather than to just stipulate to representativeness. So there's no prejudice, and there was no decision on the merits in our favor, and therefore the collateral estoppel ruling resting on the judicial estoppel ruling with error. It's not an abuse of discretion with respect to a fact determination. It's legal error, and I'll reserve the rest of my time for rebuttal unless there are further questions. Thank you, Ms. Sullivan. Mr. McCann? Yes, Mr. McCann. Thank you, Your Honor, and good morning. May it please the Court. Of course, the district court's application of judicial estoppel is reviewed on appeal for abuse of discretion, and I want to jump right into the idea of an inconsistent position, and Judge Moore asked about that. It's important that, of course, on appeal that MPT does not dispute that there were inconsistent positions. But what are the positions we're talking about? The hard thing for you, I mean inconsistent positions, nobody disputes that. There's no reason to spend your time talking about that. The hard thing for you is whether or not they prevailed in the first action. They wanted her to conclude representativeness or they wanted her to conclude that they should have an opportunity to support the representative. The reason it's important to focus on what the inconsistent position is, Judge Moore, is exactly what you asked. The assertion was MPT believed, they believed, that that one shift, the 55-75, was representative of the 18 others and that they, MPT, would be prejudiced. But they didn't win on that. Absolutely they won on that. If they won on that, then she would have found them representative. She only allowed them to go to the second action to establish whether they were representative or not. She relied on, she absolutely relied on and accepted, which is the standard we're talking about here, the notion that they believed it was representative and that they would be prejudiced if the 18 others were thrown out. If you look at the timeline... I don't understand your argument. To me, the issue is, did she conclude that they were representative or not? So show me where she concluded they were, in fact, representative. She's never concluded in this case that they are or aren't representative. And that was the whole problem with the first case. The court in LG had no opportunity to evaluate whether they were or weren't because they violated the local patent rules. If the district court didn't decide that they were representative, how did MPT prevail? Because that's what they wanted. They wanted representatives. The question is whether the district court accepted their decision. That's the inquiry we're going to hear. And clearly she did. The pinnacle of that is the October 19th order on the motion for reconsideration, footnote 4. Before that order, the 18 chips were out. They were done. They were dead. And when they moved to reconsideration on October 4, they accused LG, first of all, of misleading the court because LG didn't tell the court that that one chip was representative of the 18 others. And then their lead counsel filed a declaration under oath saying that the one chip was representative. And then on October 15, their expert, Dr. Richardson, filed a sworn declaration saying that the one chip is representative of the others after countless hours of redoing the code, made that determination. And then she issues the order on October 19th. And yes, she denied the motion for reconsideration. But what did they get? They got footnote 4. Footnote 4 said MPT claims to be prejudiced, but I'm giving MPT the right to file a new case. And sure enough, three weeks later, November 8th, they filed a second complaint. And the next day, November 9th, in the summary judgment hearing, she comes into court and says, Yeah, LG, I guess you didn't like that, did you? And we didn't like that. We certainly didn't like that. I don't understand most of what you're saying here. I don't see how it's relevant to the point that I'm trying to ask you, which is did the district court find they were representative or not? Because that's what they wanted. The district court never made that finding because the district court in the first case from whether or not the issue is represented. They didn't win on that issue in the first case. She saved it for another day, but they didn't win on it. Yes. Your Honor, we keep going back to the issue. And the point is, what did they say in that first case that she did accept? She accepted the notion that they believed that the 5575 was representative of the 1890s. No, she didn't accept the notion they believed it. Who cares that they believed it? She accepted the notion that they asserted it. Correct. That they had put forth evidence in sufficiently diligent process in order to have that issue not be stricken with prejudice. So what did MPT gain from making that position and making that assertion? They violated the local patent rules. When they filed the September 4th contentions, after warning after warning and two years of litigation, we've got the first claim chart, 10 weeks before trial, there was only one chip. So when she issued her September 28th order, she said, okay, you can go forward on 5575, but you're done on the 1890s. At that point, they had violated the patent local rules. What does that mean? She issued an order dismissing those chips from the case with prejudice? Her September 28th order, as she said in the opinion below that's on review here, her September 28th order had effectively gotten rid of the 18 because they weren't going forward in the case. And that's why that footnote 4 is so important here, and that's the pinnacle of the acceptance, because she accepted their contention, their contention that they believed in. And based on that, she said, all right, the diligence, the diligence you demonstrated for 6575, she did accept diligence on that. I'm going to take you at your word that you were diligent on the 18 others as well, based on your representation, and I'm going to give you the opportunity to go after LG for damages on 95% of the profits. But the second case, and it's important to go forward and talk about what the second case was about. The second case was a limited case to test the proposition of representativeness that was given to NPT. And they say in the briefing, and I think here in argument today, how suddenly the court changed their mind, they were surprised by they weren't allowed to go forward with a full litigation in that second case. But it is abundantly clear from not only the opinion below on review, but from the contemporaneous transcripts that everybody understood that the second case was limited to that very precise issue. And I'll cite to the November 9th summary judgment hearing. Well, it wouldn't have been limited to that precise issue because then damages. If they were successful, it would have included damages and injunction and any other possible issues. So it wasn't limited to that precise issue. Well, the liability portion certainly was limited to that. And if you look at the November 9th transcript, in Judge Henry you had references to judicial estoppel. It doesn't surprise. We knew on November 9th, the day after the second complaint was filed, that we'd have collateral estoppel issues. We'd have judicial estoppel issues. And their lead counsel even admitted that judicial estoppel could apply. Everybody understood that the second case was limited. In fact, the hard thing for me is I actually agree with you. I believe that she fully intended to limit the second case on liability of representativeness. I'm just not sure judicial estoppel is the appropriate legal doctrine upon which you could possibly prevail here. Maybe you've got some other basis. But judicial estoppel requires that she made an on-the-merits decision in their favor on the precise issue. And that precise issue was are they representative or not. Well, Your Honor, if you go from a case where you have 18, 95% of the accused products are out, from a situation where 95% of the products are back in, they got something out of that. And you can call it acceptance. You can call it reliance. You can call it a win or victory. But whatever it was, they got a benefit, a very important substantial benefit. Yes, but the issue isn't did she buy them lunch. The issue is did they win on the precise issue that they were arguing. They did because, again, the contention was that we had this contention. And before when they were out, she said, here, you violated local patent rules. You violated my procedures. I've been telling you for two years now you have to give me claim charge. And you didn't give me claim charge. Then they came in, declaration after declaration, sworn testimony that was representative. And she said, I don't know if it was representative, and the LG certainly didn't know. We never had a claim charge. We didn't know what they were accusing. We never make a claim they're representative. And only after that they got that second case. And that's a critical point. And regarding this March 29, 2013 hearing, and they quote this reference to Judge Haas saying, oh, we need to test in the second case was it or wasn't it representative. The same day, the very same day she issued a scheduling order for the second case at A37, starts at A37 of the record. In the scheduling order, item five is LG's motion for summary judgment on claim inclusion, issue inclusion. No trial date, no other typical date that you see in a case in the Southern District of California. It was purposely limited on this very precise issue. And she even said at that hearing transcript on March 29, I'm not seeing the case the way NPT, you're seeing it. This is not a whole new case. This case is a very limited case. And, of course, she said that in her order below the thumb review. And one way to test the proposition on reliance is if NPT had come into court in the fall of 2012 for the trial and said, you know, Your Honor, we got the claim charge for this one chip, 5575. Well, you know what? We never got claim charge for the others. And we don't know whether it works the same. Or, even worse, they say it doesn't work the same. It's different. She would have struck that out of the case with prejudice and there's no doubt about that. She said that at A1069 in the transcript. And NPT agrees, and the Red Marine, page 10, they completely agree she has the authority to do that. They violated the local rules. If they came into court saying what they're saying now, in the fall, 2012 before the trial, it would have been out. It would have been with prejudice, it would have been done, and there's no dispute about it. Everybody agrees with that. The judge, we do, and so do they. And there's no question about that. So that's the epitome of benefit that they gained and the reliance that the judge evokes on that issue. Now, with respect to, if I may, with respect to the issue of MPEG-4 Part 2, that issue, of course, stands or falls with the broader judicial establishment. At the outset, all these admissions that were said about the similarity between the 1 and the 18 others applied to both codex, MPEG-4 Part 2 and the H.264. There was no distinction. Going into trial, at the record, 35-34, in the pretrial filings, they were going to trial on both codex. The verdict form was a general verdict form on 65-75 chip. There was no infringement on both codex. So clearly, and of course, Dr. Richardson's admissions and his countless hours of review applied to both codex. So the non-infringement finding, the finding by the jury in the first case of 65-75, if, in fact, they're the same, the judicial establishment applied, as we believe it should be, then it applies to both codex and there's no distinction. But moreover than that, she held on procedural grounds that they dropped, and this really is an argument that applies across the board, that they dropped their MPEG-4 Part 2 argument in front of the jury. They didn't make any evidence of it. And therefore, her acceptance of their assertion that they were diligent, based on the representative product of 65-75, that falls to pieces. And if you look at her opinion in 827-28, she lays that out, how on the unique circumstances of this case, the fact that they dropped that, then there's no diligence. Then this idea of representation, that if you're going to drop that issue, if you're going to drop that claim, then you weren't diligent as a procedural matter. I'd like to conclude with this notion about the relationship between Case 1 and Case 2. If there's some kind of reversal or change in Case 1, 16-20, that does not affect Case 2. Because fundamentally, Case 2 really is about a procedural matter that judges have dealt with below. And again, if they come into court back in the fall of 2012 and made the claim that the 18 others were not representative, that they weren't represented by that one shift, they'd be stricken for all time. And they shouldn't gain a benefit here. They shouldn't gain a benefit here by failing to follow the local patent rules, what they're trying to do. So no matter what happens in the first case, affirmative here is appropriate as a procedural matter. And they shouldn't gain a benefit by that here, by not following the local patent rules. Mr. McKeon, did you say that MPT did not abandon its infringement theory on MPEG-4 with respect to the 6575? They did. They did? They did, yeah. 6575 in the first trial, they abandoned it completely. And then in Case 2, when they tried to resurrect that, she struck that out. Right, okay. I just wanted to make sure I understood. And her basis was procedural, but again, the summary judgment ruling applies across the board to both codex. Okay. So let me just conclude, unless there's any questions. Let me just conclude by saying that the issue presented really is based on procedural matters that Judge Huff below dealt with in connection with dozens and dozens of party submissions, hours of hearing, hours and hours of hearing, and she really gave MPT every break of the way. I mean, even though the case started in 2012, we didn't get a first claim chart until September 4th. Two years later, September 10th, 2010, it started. 2012, we got our first claim chart. And she gave them every break to get the claim charts right, and they only did with respect to that one. And she gave them every break along the way, and finally she had enough. She invoked judicial estoppel appropriately to stop them from playing fast and losing the court, and it was in her discretion to do that, and it should be affirmed on appeal. Thank you, Mr. McKeon. Ms. Sullivan has some rebuttal time, about four minutes. Thank you very much, Your Honor, and thank you for your patience with us on this matter this morning. I'd like to begin with why it's a red herring for my friend to keep referring to the violation of the local patent rules, and I want to come good on my promise to Judge Moore to give you the citation for the finding of diligence, and the citation is A2031, where the court says, with respect to MPT's first argument, the court agrees that MPT showed it was diligent in pursuing third-party discovery for all 19 Qualcomm chips. District Court reiterates that at A2060, where she says, I found diligence, right? Second, I... I guess I'd like you instead to focus on this issue of whether or not she found in your favor on the issue in the second litigation. She did not, Your Honor. She did not find... I think you said it exactly correctly before. But I can't figure out exactly how to characterize the issue. Is the issue whether it was representative or not, or whether you were limited to whether it was representative? She did not decide the limitation to representativeness. To the contrary, Your Honor, the scheduling order that my friend referred to was open-ended with respect to discovery, and if she was limiting it to representativeness, she did not do it in that scheduling order. Respectfully, I think what she did is she said representativeness is an open issue for the second trial. Let me give you a couple of key sites that are helpful here. Yes, but she didn't expect you to do a 180, obviously. No, no, Your Honor. She was prepared to try the change of position even after the verdict in the first case. She was, Your Honor. See, she never would have let you. In the first case, you didn't put fourth infringement contentions on the other chips. Your only chance of saving them and not having a strike with prejudice was to allege they were representative. That was it. She wasn't going to let you introduce, at that point, she made it clear, all new claim charts analyzing each one. Your Honor, with respect, the district court understood that with more time to examine the source code, the position on representativeness might legitimately change. And I want to... Where? Tell me where that she gave that indication. I'll be happy to tell you, Your Honor. I would refer you to the November 9, 2012 hearing. That's on the motion for summary judgment. And I'd refer you to page A2059, where the district court says if these are really representative claims, then it will be decided one way or the other. Open-ended with respect to the second trial. Your Honor, again, on 2060... Right. If they're representative... If they're representative. Your Honor, we know... She's not leaving open the idea that you're going to be able to introduce a whole set of claim charts if they're not representative and prove infringement on separate allegations. Well, actually, Your Honor, she does open... If you look at A38, which is the scheduling order, she calls a schedule for MPT to serve its infringement contingents and expert report by May 14th and to exchange with parties a list of infringement, non-infringement expert witnesses expected to be called at trial. So with respect... I don't see how that has anything at all to do with whether or not you're going to go beyond representativeness. That should identify the experts who are going to put forth your case on representativeness. Your Honor, if you choose to reverse and remand for a trial that may, in fact, be limited by the district court to the issue of representativeness, we'll take it. Because that is exactly what we were promised and exactly what we hope to have. And I want to point out A2060, Your Honor. It's a very important line where the district court says, LG does not win by default. She is contemplating a merits trial on the issue of representativeness or similarity. She says it again on A2065. I thought my intent was clear. Let that happen for another day. But we were then whipsawed and deprived of that very opportunity we'd been promised. When the district court said, oh, there's judicial estoppel. With respect, I think the court has already identified through the questioning of my friend why there cannot be judicial estoppel here. Because MPT did not prevail on the issue of representativeness. That was the basis for preclusion. You should reverse and remand. And with respect, you should also remand for the MPEG-4 claim. They were not actually litigated. Ninth Circuit law requires for estoppel that they be actually litigated. We couldn't have possibly litigated MPEG-4 claims with respect to the severed chips because they weren't in the first trial. And our incentives would be quite different because a lot of the products in the second trial contain MPEG-4-compliant products and that we should have a chance to try those on. You're saying that those other chips are different from the first chip, the 6575? And that's why you want to be able to litigate MPEG-4? Yes, we are arguing that they're different. And separately, we're arguing that we have never had a chance to litigate the MPEG-4 piece of those chips. Right, but of course that's in conflict with the original position, which is all the chips were part and parcel the same. That's correct, Your Honor, but there's no holding or law of the case that that was ever accepted. And if I leave you with nothing else today, we never prevailed on the representativeness that was argued. And remember, judicial estoppel depends on the court accepting our position, not on it acknowledging that we've made the argument. So with respect, even if you agree with us on 1620, 1621 gets reversed too. Even if you don't agree with us on all of 1620, 1621 entitles that we should get a new trial on the chips not covered in the first trial. No further questions. Thank you very much, Your Honor. Thank you, Ms. Sullivan. The case will be taken under advisement. The panel will briefly adjourn and return in a slightly modified form. All rise.